STEPHEN T. RUTKOWSKY, DOING BUSINESS AS STEPHEN
    T. KELLY, PLAINTIFF, DEFENDANT IN ERROR, v.
    MICHAEL BOZZA, DEFENDANT, PLAINTIFF IN ERROR.

Argued March 22, 1909—Decided June 14, 1909.

1. "An act to regulate the use of business names" (*Pamph. L.* 1906.
   *p.* 513), making it a misdemeanor to transact business under a
   fictitious name without filing, in the office of the clerk of the
   county where the business is transacted, a certificate, as required
   by the act, does not prevent a plaintiff, transacting business under
   a name which was not his real name, without having filed the
   certificate, from recovering on an executed contract.
2. The act, as adopted in this state, being a substantial reproduction
   of the statutes of New York on the same subject, the interpreta-
   tion of the act by the courts of that state will be presumed to
   have been accepted by the legislature of this state as indicating
   its purpose and effect.

---

On error to the Supreme Court.

For the plaintiff in error, *Gaetano M. Belfatto.*

For the defendant in error, *Edward Q. Keasbey.*

The opinion of the court was delivered by

BERGEN, J.   This suit was instituted by the plaintiff to re-
cover the value of certain plaster boards sold and delivered by
him to the defendant.   The cause was tried at the Essex Cir-
cuit, where the plaintiff recovered a judgment which the
defendant, the plaintiff in error, seeks to reverse.

The first assignment of error argued is that plaintiff was carrying on his business under an assumed name without filing, in the office of the clerk of the county where such business was carried on, the certificate required by the statute of 1906 (*Pamph. L., p.* 513), which makes it a misdemeanor for any person or persons to carry on or transact business under an assumed name without filing, in the office of the clerk of the county or counties in which such person or persons transact such business, a certificate setting forth the name under which it is transacted, and the "true or real full name or names" of the person or persons conducting or transacting the same, with the post-office address or addresses of the said person or persons. It is admitted that the plaintiff transacted his business with the defendant under the name of Stephen T. Kelly, which was not his real name, and that the certificate required by the act had not been filed. It also appeared that the contract had been executed by the plaintiff by the delivery of the goods sold by him to the defendant.

At the close of the plaintiff's case there was a motion for nonsuit based upon the failure to file a certificate, and this motion being refused, an exception was sealed and error assigned. The act does not make the contract void, but subjects the offender to indictment. It is highly penal, and must be strictly construed. Its manifest intention is to protect persons giving credit to one doing business under a fictitious name, and follows, in substance, a similar statute of the State of New York, adopted in this state after it had received judicial construction in New York, which it will be presumed was accepted by the legislature of this state to be the true interpretation of the words of the act so adopted. *Fritts* v. *Kuhl,* 22 *Vroom* 191; *DeRaismes* v. *DeRaismes,* 41 *Id.* 15-18.

In construing the New York act the Court of Appeals of that state, in *Gay et al.* v. *Seibold,* 97 *N. Y.* 472, said: "The purpose of the statute was obviously to protect persons giving credit to the fictitious firm on the faith of the fictitious designation. It could have no other purpose. It was not needed to protect those who obtained credit from such a firm." This construction being, in our opinion, justified by the very words

of the act, supports the presumption that it was the legislative intent to make the statute effective as thus interpreted, and that where, as in this case, goods contracted for have been accepted, and the contract executed by the vendor, the debtor cannot escape payment because the creditor has rendered himself liable to indictment. The motion to nonsuit was properly refused.

The next alleged error argued was the refusal to nonsuit upon the ground that the plaintiff had failed to prove an agreement "whereby the plaintiff agreed to sell within a certain time a certain quantity of goods for the price of which the suit was brought." The basis of this assignment of error is that proof of the agreement rested upon a carbon copy of an alleged order, which the court admitted after proof that notice had been given to the defendant to produce the original. As the plaintiff in error has not seen fit to print in the record submitted to the court the copy of the order we are without any knowledge of its contents, but there was evidence of a sale, delivery and part payment, sufficient to justify the verdict. The order was admitted as evidence and submitted to the jury, together with proof of delivery and acceptance of the goods, the value of which was the subject-matter of the controversy between these parties, and as the plaintiff in error has not afforded the court an opportunity to examine the order, we cannot say that the jury were not justified in finding as a fact that its terms had been complied with on the part of the plaintiff.

The other point argued, relating to an alleged misrepresentation as to the character of the goods sold, is not the subject of any exception taken, and therefore cannot be considered.

The judgment below is affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Reed, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Gray, Dill, Congdon, J.J. 16.

*For reversal*—None.